UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| AUTO-OWNERS INSURANCE COMPANY, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | Case No. 1:11-cv-27 |
| v. | ) | |
| | ) | Judge Mattice |
| WALTER E. SINOR, *et al.* | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM AND ORDER

### I.   INTRODUCTION

Plaintiff Auto-Owners Insurance Company filed this action seeking a declaration of its rights and duties under various insurance policies issued to Defendant S.E.W. Construction, Inc.  Defendants Walter E. Sinor and Betty S. Sinor have filed a Motion to Dismiss Plaintiff's Complaint [Court Doc. 19] and a Motion to Dismiss Plaintiff's Amended Complaint [Court Doc. 34].  The briefing on the latter Motion brings the issue of the Court's jurisdiction to light, and the Court will take the opportunity to analyze the *Grand Trunk* factors to determine whether the Court will exercise jurisdiction over this declaratory judgment action.  For the reasons discussed below, the Court will **DENY** both Motions to Dismiss [Court Docs. 19 & 34] and will **EXERCISE** its discretionary jurisdiction over this matter.

### II.   FACTS

Plaintiff Auto-Owners Insurance Company (hereinafter "Plaintiff Auto-Owners" or "Plaintiff') issued two insurance policies to Defendant S.E.W. Construction, Inc. (hereinafter "Defendant S.E.W.") for Commercial General Liability Coverage: one in 2005, Policy No.

032319-03554585-05 ("2005 Policy"), and one in 2006, Policy No. 032319-03554585-06 ("2006 Policy"). (Court Doc. 30-3, 2005 Policy, and Court Doc. 30-4, 2006 Policy.) Each of these two policies excludes insurance coverage under the heading "Expected or Intended Injury" for bodily injury or property damage reasonably expected or intended from the standpoint of the insured. (Court Doc. 30, Am. Compl. ¶ 83). Another section of the Policies precludes coverage for "property damage" to "that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it." (*Id.* ¶ 89.) The Policies define "your work" as including "work or operations performed by you or on your behalf" and "materials, parts or equipment furnished in connection with such work or operations." (*Id.* ¶ 90.) The term "your work" also includes "warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of 'your work.'" (*Id.*) The Policies' "your work" exclusion does not contain a subcontractor exception. (*Id.* ¶ 95.) The Policies also preclude coverage for "property damage" to "that particular part of real property on which any insured or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations." (*Id.* ¶ 87.) Finally, the Policies provide coverage for bodily injuries or property damage arising out of an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* ¶¶ 72-74.)

On October 2, 2009, a state court complaint was filed by Walter E. Sinor and Betty S. Sinor (hereinafter "the Sinors") against Defendants Sherrill E. White, Individually and d/b/a S.E.W. Construction, Inc., Greg Roberts, Individually and d/b/a G. Roberts Company,

Inc., and Does 1 thru 4 in Hamilton County Chancery Court. (Court Doc. 28-1, Am. State Court Compl.) This action, styled *Walter E. Sinor and Betty S. Sinor v. Sherrill E. White, Individually and d/b/a S.E.W. Construction, Inc., Greg Roberts, Individually and d/b/a G. Roberts Company, Inc., and Does 1 thru 4* , Docket Number 09-0783, involves claims against Defendants and their businesses based on property construction at Friar Branch Townhomes, Lot 20, 6283 Laramie Circle, Chattanooga, TN, 37421 beginning April 12, 2006. (*Id.* ¶ 6.)

The state court complaint asserts that the Defendants did not properly install and/or failed to supervise the installation of the plumbing and sewer lines in accordance with the applicable standards and codes for new construction. (*Id.* ¶ 17.) The Sinors allege that by failing to bring construction in line with applicable building standards and codes, Defendants breached the express and implied warranties in the contract. (*Id.* ¶¶ 32-33.) The complaint further alleges both negligent and intentional misrepresentation on the part of the Defendants. (*Id.* ¶¶ 35-43.) The Sinors also allege that Defendants engaged in unfair or deceptive acts or practices declared unlawful by the Tennessee Consumer Protection Act. (*Id.* ¶ 46.) The Sinors aver that negligent installation of the plumbing and/or sewer lines was an accident and could not have been foreseen by either Defendant Roberts or Defendant White. (*Id.* ¶ 53.) The complaint further alleges that raw sewage has collected in the "sags" or "bellies" of the sewer lines as a result of the negligent installation and has poured inside the townhome, exposing the Sinors to harmful conditions and damage to various parts of the townhome. (*Id.* ¶¶ 54-55.) The Sinors assert that they have incurred damage to tangible property, loss of use of property, and expenses as a

result of the negligent installation. (*Id.* ¶¶ 56-58.) Finally, the Sinors contend that the plumbing and sewer lines may have been negligently damaged by Defendants or a subcontractor who drove a vehicle or heavy piece of equipment over the sewer lines before the foundation was completed. (*Id.* ¶¶ 60-67.)

## III.    ANALYSIS

In the instant action, Plaintiff Auto-Owners seeks a judgment under the Declaratory Judgment Act, 28 U.S.C §§ 2201-2202 and the Tennessee Declaratory Judgment Act, Tenn. Code Ann. § 29-14-101 *et seq*. The Declaratory Judgment Act grants district courts discretionary jurisdiction over actions within its purview. *Id.* § 2201 (providing that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added); *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942)). This statutory discretion is broad, but not unbounded.

The United States Court of Appeals for the Sixth Circuit provides specific guidance to district courts faced with the decision of whether to hear a declaratory judgment claim. District courts should consider:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court will consider each *Grand Trunk* factor in turn.

-4-

1.  *Whether the declaratory action would settle the controversy*.

In *Scottsdale Insurance Company v. Flowers*, 513 F.3d 546 (6th Cir. 2008), the Sixth Circuit acknowledged that two lines of precedent had developed under this factor. One concluded that a declaratory judgment action "settled the controversy" if it decided the insurance coverage controversy, even though it did not help resolve the underlying state action. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). The other found that the declaratory judgment action would not "settle the controversy" because it did not settle the ultimate controversy between the parties in state court. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812-13 (6th Cir. 2004).

In *Flowers*, the court reconciled these two theories by noting that factual differences in the cases led to the divergent outcomes. 513 F.3d at 555-56. The court held that the facts of that case were more aligned with *Northland* in that the declaratory judgment action would settle the controversy because it would settle the only issue before the federal court, whether there was insurance coverage. *Id*. at 556. The court found particularly compelling the fact that coverage could not be addressed by the state court, as the insurance company was not a party to the state court proceeding. *Id*.

In this declaratory judgment action, the only issue before the Court is whether the policies issued to Defendant S.E.W. exclude insurance coverage for the allegations in the state court complaint concerning property damage at the Sinors' townhome and expenses they allegedly incurred. The state court case will involve discovery and fact finding to determine the cause of the alleged property damage. The allegations in the state court

complaint do not raise any issues as to insurance coverage. There is no indication that Plaintiff has filed a declaratory judgment action in Tennessee state court. Plaintiff has instead chosen to file this action to have the coverage issue decided.

The Sixth Circuit has held that a declaratory judgment action would settle the controversy when the insurance company "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Northland*, 327 F.3d at 454; *see also Flowers*, 513 F.3d at 556 (where insurance company was not a party to the state court litigation, the coverage issue "was not and could not be considered.") The same is true in this case. The only issue pending before the Court is whether the policies issued to Defendant S.E.W. would provide coverage for the claims at issue in the state court litigation, and resolution of the declaratory judgment action would settle that controversy.

Accordingly, the Court finds that this declaratory judgment action would settle the controversy between the parties and that this factor weighs in favor of exercising jurisdiction.

> 2. *Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue.*

The second *Grand Trunk* factor is closely related to the first. *Flowers*, 513 F.3d at 557. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id*. The Court's focus in deciding this factor must be on "the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer." *Id*.

In this case, the declaratory judgment action would resolve the question of whether

the insurance policies issued to Defendant S.E.W. include coverage for the various claims pending in state court. As noted above, the coverage issue is not before the state court because Plaintiff is not a party to that action. There is nothing impairing this Court's ability to decide the coverage issue. Accordingly, the Court will be able to make a final determination as to coverage and that determination will clarify the legal relations between the parties. Thus, the second factor weighs in favor of exercising jurisdiction.

3. *Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for res judicata.*

"The third factor is meant to preclude jurisdiction for declaratory plaintiffs who filed their suits mere days or weeks before the coercive suits filed by a natural plaintiff and who seem to have done so for the purpose of acquiring a favorable forum." *Flowers*, 513 F.3d at 558. Courts are reluctant to impute an improper motive where there is no evidence of such. *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 279 (6th Cir. 1990). The Sinors filed their state court action in October 2009 and Plaintiff Auto-Owners filed their initial complaint on February 9, 2011. (Court Doc. 1, Compl.) "[W]hen the plaintiff has filed his claim after the state court litigation has begun, we have generally given the plaintiff 'the benefit of the doubt that no improper motive fueled the filing of the action.'" *Flowers*, 513 F.3d at 558 (quoting *Bituminous*, 373 F.3d at 814).

Plaintiff's pleadings do not suggest that it is seeking a procedural advantage or acting in bad faith.[1] Moreover, as Plaintiff is not a party to the state court action, the issue

---

[1] Although the Sinors have made certain arguments in this regard, Plaintiff Auto-Owners points out that the documents upon which the Sinors rely are outside the pleadings and are not to be considered in the context of a Motion to Dismiss. *See* Fed. R. Civ. P. 12(d). (Court Doc. 38, Pl.'s Resp. to Defs.' Mot. to Dismiss at 14-15.) Moreover, the Court does not find the Sinors' arguments to be persuasive. The Sinors contend that Plaintiff Auto-Owners lulled them into believing that the state court case would soon settle, which led them to stop

-7-

of coverage is not properly before that court. Accordingly, the third factor weighs in favor of exercising jurisdiction.

4. *Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.*

The fourth *Grand Trunk* factor addresses concerns of comity and federalism inherent in certain declaratory judgment actions. To aid in this analysis, the Sixth Circuit provides three sub-factors:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous Cas. Corp.*, 373 F.3d at 814-15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)). Each such sub-factor will be addressed in turn.

a. *Whether the underlying factual issues are important to an informed resolution of the case.*

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560.

---

engaging in aggressive discovery, and then Plaintiff Auto-Owners filed the instant lawsuit. (Court Doc. 35, Mem. in Supp. of Defs. Walter E. Sinor and Betty S. Sinor's Mot. to Dismiss Pl.'s Am. Compl. at 8-9.) This filing blindsided the Sinors and they claim that Plaintiff Auto-Owners filed suit to harass and distract them. (*Id.*)

The Court notes that the Sinors' choice to cease discovery in anticipation of settlement was a strategic move that has apparently now backfired and cannot be blamed entirely on Plaintiff. There is nothing to suggest that Plaintiff was bound to pursue settlement and has thus improperly filed the instant lawsuit. Simply put, the Court does not consider the circumstances of the case to indicate that Plaintiff is acting in bad faith with regard to procedural fencing or a race to res judicata.

A review of the state court complaint reveals that the crucial facts in that action will be the sequence of events which began on April 12, 2006. Essentially, the state court case is dependent on the facts regarding the construction on the Sinors' property. The Sinors have asserted alternative legal theories of obtaining damages by claiming that Defendants acted intentionally, negligently or fraudulently. (Am. State Court Compl. ¶¶ 22-67.) The jury in that state civil action will eventually make the factual findings that will implicate one of these legal theories.

The issue here, however, concerns a separate and distinct set of facts and legal questions. The Court would be answering questions related to the interpretation of written insurance contracts, including what actions are excluded under the exclusionary clauses. The Sinors submitted a list of questions and relevant facts that they argued would cause friction between the state and federal courts. (Defs.' Mem. at 10-11.) This Court, however, will be able to determine the scope of coverage of the insurance policies without answering these specific factual questions, because determination of those facts will not be necessary to decide what events or occurrences are excluded under the insurance policies. As the Sixth Circuit stated in *Northland*, "[t]he district court was fully capable of determining the nature of the coverage provided by the contract of insurance, and this determination did not have to await the resolution of factual issues in the state action." *Northland*, 327 F.3d at 454. In short, the relevant facts, if any, that the Court would determine here would not be at issue in the state court action, and vice versa.

The Court further notes the Sinors' argument that additional discovery in the state court case might reveal other causes for the "sags" and "bellies" which could implicate insurance coverage. (*Id.* at 5-6.) Currently, however, the Court need only consider the

-9-

allegations in the Sinors' complaint and determine if the Plaintiff has a duty to provide insurance coverage if said allegations are proven true. Because there appears to have been a minimal amount of discovery and investigation done in the state court case, it is possible that a new cause for the "sags" and "bellies" could be found during further discovery. This scenario, however, does not preclude the Court from exercising jurisdiction in the case, for the Court could limit the scope of any potential declaratory judgment to the facts, claims, and causes currently present in the state court complaint. Thus, the Court could still help resolve the issues surrounding the insurance contracts without foreclosing other potential avenues for the Sinors to obtain insurance coverage should new evidence arise.

The Court concludes that the resolution of the declaratory judgment action will not depend on the factual issues necessary to resolve the state court action; accordingly, this sub-factor weighs in favor of exercising jurisdiction.

> b.   *Whether the state trial court is in a better position to evaluate those actual issues than is the federal court.*

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. State courts are generally considered to be in a better position to analyze novel questions of state law. *Travelers Indemnity Co. v. Bowling Green Professional Assoc.*, 495 F.3d 266, 272 (6th Cir. 2007). "This consideration appears to have less force when the state law is clear and when the state court is not considering the issues." *Flowers*, 513 F.3d at 560.

The Sinors list seven potentially novel issues of state law that it contends the court would be forced to decide upon exercising jurisdiction. (Defs.' Mem. at 12-13.) None of

the issues raised, however, would require this Court to rule or speculate upon novel issues of state law. Each of the seven issues raised would be easily resolved without deciding any novel questions of state law by either applying existing case law or applying the definitions present in the two insurance policies. The fact that the issues presented here are based in state law does not provide a sufficient basis for determining that this Court cannot accept jurisdiction over a declaratory judgment actions solely concerning insurance coverage. There need not be federal questions presented to this Court for the Court to accept jurisdiction.

The Sixth Circuit has held that, when an insurance company, as in this case, "[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity." *Northland*, 327 F.3d at 454. In this case, it is unlikely that the Court will have to interpret state law without sufficient guidance from the Tennessee courts, and therefore unlikely that the Court's exercise of jurisdiction over the declaratory judgment action would offend comity principles. Accordingly, this sub-factor weighs in favor exercising jurisdiction.

> c. *Whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.*

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. Generally, the interpretation of insurance contracts is a question of state law with which state courts are more familiar. *Travelers*, 495 F.3d at 273. "The

-11-

states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815. While the Court is sometimes called upon to interpret and apply state law as an incident of its diversity jurisdiction, it is clearly not as well positioned to make judgments of state public policy as a state court. Accordingly, the third sub-factor weighs against exercising jurisdiction.

The negative implications of the third sub-factor, however, do not outweigh the other two sub-factors. Overall, the fourth *Grand Trunk* factor weighs in favor of exercising jurisdiction.

> 5. *Whether there is an alternative remedy which is better or more effective.*

"A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Flowers*, 513 F.3d at 562 (quoting *Grand Trunk*, 746 F.2d at 326). One of the alternative remedies available to Plaintiff is to seek a declaratory judgment in Tennessee state court. Tennessee law provides an avenue for a party in Plaintiff's position. *See* Tenn. Code Ann. §§ 29-14-101 to 29-14-113.

Tennessee state court is probably the better forum for this action. The state court might have been able to combine the declaratory action with the liability action so that all issues could be resolved by the same judge. *See Bituminous*, 373 F.3d at 816 (holding that, in a declaratory judgment, the preferable forum is normally the state court in which the underlying litigation is pending). State courts are generally in a superior position to interpret insurance contracts and to weigh issues of public policy with regard to the insurance industry. *See id*.

Overall, the final factor weighs against exercising jurisdiction.  *Travelers*, 495 F.3d at 273 (finding that the alternative remedy of a state court declaratory judgment action or indemnity action "weighed against exercising federal discretionary jurisdiction.")

6.  *Weighing the factors*

The Sixth Circuit provides little guidance as to how the *Grand Trunk* factors should be weighed.  *See Flowers*, 513 F.3d at 563 ("[W]e have never indicated how these *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion.") In this case, four of the five factors weigh in favor of exercising jurisdiction. The Court cannot say that the one factor against exercising jurisdiction outweighs the other four factors.  Accordingly, the Court will **DENY** the Motions to Dismiss filed by the Sinors and will **EXERCISE** its discretionary jurisdiction over the instant matter.

## IV.    CONCLUSION

For the reasons explained above, the Court **DENIES** the Sinors' Motion to Dismiss Plaintiff's Complaint [Court Doc. 19] and the Motion to Dismiss Plaintiff's Amended Complaint [Court Doc. 34] and **EXERCISES** jurisdiction over this declaratory judgment action.

**SO ORDERED** this 9th day of August, 2011.

_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE